61077. CITIZENS & SOUTHERN NATIONAL BANK et al. v. ABBOTT et al.

BIRDSONG, Judge.

The Citizens & Southern National Bank (C&S) appeals from the following order of the trial court:

"Plaintiff filed a Writ of Possession (Mortgage Foreclosure) pursuant to Ga. Code Ann. § 67-702 et seq. Defendant Gretta C. Abbott filed an Answer under oath alleging certain legal and equitable defenses. Defendant Reginald D. Abbott filed a Plea for Stay on Account of Bankruptcy and, after discharge in said bankruptcy, filed a Plea of Discharge subsequent to being granted a Discharge in Bankruptcy. The Defendant Gretta C. Abbott filed a Motion for Summary Judgment as did the Plaintiff.

"The pleadings showed that R. D. Abbott was indebted to the Plaintiff in the amount of $162,142.73 upon his personal guarantee of Notes executed by Abbott-Bridges Wood Products, Inc. Such corporate Notes were in default and notice of such, together with Plaintiff's intent to enforce the provisions for attorney fees, had been given to the Defendant R. D. Abbott and other guarantors on or about April 25, 1979.

"On January 11, 1977, Defendant R. D. Abbott executed a Note to the Plaintiff in the amount of $5,756.76 giving Plaintiff as collateral a security interest in a 1977 Oldsmobile Cutlass automobile . . . This Automobile is the subject of this proceeding. The Notes guaranteed by Defendant R. D. Abbott and the Note for the automobile contained an 'open-end' or 'other indebtdness' clauses [sic].

"The defensive pleadings further showed . . . that a divorce was granted between [Mr. and Mrs. Abbott] herein on June 19, 1979. The Divorce Decree provided that, as part of her permanent alimony, Defendant Gretta C. Abbott be granted Defendant R. D. Abbott's interest in the automobile which is the subject of this proceeding. Shortly after judgment in the divorce proceeding, Defendant Gretta C. Abbott contacted the Plaintiff as to the balance due on the automobile and was advised that such balance was $1,094.77. This amount was paid by Defendant Gretta C. Abbott on July 3, 1979 to and accepted by plaintiff.

"It was the contention of Gretta C. Abbott that, in contacting the Plaintiff to determine the amount due, and by reason of the several Notes, the amount due, insofar as she was concerned, was an amount in dispute. The amount stated by Plaintiff in relation to the automobile was then paid by Mrs. Abbott and accepted by Plaintiff in satisfaction of its interest in the automobile, thus affording to the Defendant Gretta C. Abbott the benefit of Accord and Satisfaction and thereby estopping the plaintiff from asserting any further claim to a security interest in the automobile, to wit: 1977 Oldsmobile Cutlass . . . .

"It is hereby ORDERED that . . . Summary Judgment be entered in favor of Defendant Gretta C. Abbott and against Plaintiff. Likewise, the Plaintiff's Motion for Summary Judgment is herewith denied."

The trial court's conclusion, upon the facts and contentions it succinctly stated, is eminently correct. The appellant bank, although it gave notice that the husband's corporate notes were in default in April, 1979, interposed no claim to the Cutlass automobile, which was secured by another note, and which the bank now claims it is entitled to by virtue of the "open-end clause" in that note. In June, 1979, the

automobile was awarded to Gretta Abbott as permanent alimony following her divorce. In July, 1979, Mrs. Abbott inquired to the bank as to the balance due on the automobile note, and when she paid the balance the bank accepted it. This constituted accord and satisfaction for the obligation (*Rivers v. Cole Corp.,* 209 Ga. 406, 408 (73 SE2d 196)) and, the bank is estopped to deny that the obligation was satisfied. The bank is estopped to claim an interest in the automobile for other obligations under any "open-end" clause when it interposed no claim thereunder and accepted Mrs. Abbott's payment for the indebtedness. She plead the fact of accord and satisfaction, and it matters not that she did not use those very words. *Smith v. Varner,* 130 Ga. App. 484, 488 (203 SE2d 717).

The bank suffered no extreme prejudice as the bank was fully aware of Mrs. Abbott's pleaded defense that she had paid the obligation and the bank had accepted payment; and any "extreme prejudice" the bank does suffer is due to its own failure to claim the automobile before it was lawfully transferred to and paid for by another, and to its acceptance of that other's payment of the debt on the car. Moreover, we do not see how the bank could fairly accept the payment of a purchase-money obligation from one party and then refuse to release title to the collateral, as it did in this case, because it intends to use that collateral to satisfy obligations of a third party. Had the bank not obliged itself and Mrs. Abbott by suing for possession of the car as it did, she might have had a cause of action against the bank for fraud.

We are authorized by law to affirm the verdict below in any case, because the appellant offers us no transcript of the trial court hearing below. When no transcript is included in the record, we must assume the evidence was sufficient to support the judgment below. *Burns v. Barnes,* 154 Ga. App. 802 (1) (270 SE2d 57).

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED APRIL 21, 1981 —
REHEARING DENIED MAY 27, 1981 —

*Kathleen Horne, James R. Gardner,* for appellants.
*Clyde Thompson,* for appellees.

ON MOTION FOR REHEARING.

On motion for rehearing, the appellant C & S Bank makes various contentions as to facts and issues which it alleges this court

overlooked or misconstrued in deciding the case. However, every argument made by the appellant ignores the central element of the case, which is that after the vehicle had by lawful court judgment been awarded to Mrs. Abbott in divorce settlement, the bank — regardless of any claim it might have had in the automobile — interposed no claim in the car against Mrs. Abbott but advised her of the balance due on the purchase-money debt and accepted her money in payment without telling her it intended to retain title to the car as collateral for other debts of her former husband. Under the impact of these crucial and undisputed facts, the bank is estopped to deny accord and satisfaction, although quite obviously as the bank here contends there was no "meeting of the minds" of the parties. It is estopped to contend it had interposed a claim to the car against Mrs. Abbott, although it contends it had done so when it issued notice of default to Mr. Abbott on his corporate notes and generally (apparently without mentioning the car) indicated it would attach all collateral; this notice is not in the record. Even the contention that it interposed a proper claim against Mr. Abbott to the car is tenuous at best. Under the terms of the automobile purchase money note, the bank did have the car title as collateral for "other debts and agreements," but under those terms, the car note became in default when any other debt or agreement was in default, and although under the terms the bank did not lose any rights by delay in enforcement, the car note was never foreclosed upon, and the bank did lose any right to collateral in this car by delaying to enforce any claim until after it had accepted full payment of the car note from Mrs. Abbott.

*Accordingly, the motion for rehearing is denied.*